

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BOBBY HUCKABY, §
 §
 Petitioner, §
 §
v. § No. 4:16-CV-896-A
 §
LORIE DAVIS, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
 §
 Respondent. §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Bobby Huckaby, a state prisoner incarcerated in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be dismissed as time barred.

**I. Factual and Procedural History**

On March 27, 2012, in Criminal District Court Number Three of Tarrant County, Texas, Case No. 1247332D, petitioner waived his right to a jury trial and, pursuant to a plea agreement, pleaded guilty to one count of aggravated assault with a deadly weapon and true to a habitual-offender notice in the indictment and was sentenced to 27 years' confinement in TDCJ. (SHR02 at

258.¹) Petitioner did not directly appeal but did file two state postconviction habeas-corpus applications challenging his conviction. (Pet. at 3.) The first, filed on May 22, 2015,² was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (SHR02 at 18 & "Action Taken.") The second application, filed on September 1, 2016, was dismissed by the Texas Court of Criminal Appeals as a subsequent application under article 11.07, § 4 of the Texas Code of Criminal Procedure. (SHR03 at 2, 18 & "Action Taken.") Petitioner filed this federal petition for habeas-corpus relief on September 29, 2016.³ (Pet. at 10.)

Petitioner raises the following two grounds for relief:

(1) "Petitioner's guilty plea was involuntary when the

---

¹"SHR02" refers to the record of petitioner's state habeas proceeding in WR-84,050-02; "SHR03" refers to the record in his state habeas proceeding in WR-84,050-03.

²Typically, a petitioner's state habeas application sent via the prison mailing system is deemed filed when placed in the prison mailing system, however petitioner's petitions do not provide the date the documents were placed in the prison mailing system. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). In his first application, petitioner signed the "Inmate's Declaration" verifying the application on May 22, 2015, and it was received by the Tarrant County District Clerk for filing on May 27, 2015. For purposes of this opinion, Petitioner's first state application is deemed filed on May 22, 2015. Petitioner signed the "Inmate's Declaration" verifying the second application on August 4, 2016, however it was not received for filing by the Tarrant County District Clerk until September 1, 2016. Due to the unexplained delay, petitioner is not given the benefit of the mailbox rule as to his second state application.

³Likewise, an inmate's federal habeas petition mailed via the prison mailing system is typically deemed filed when the document is placed in the prison mailing system. *Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998). Petitioner indicates that he placed his federal petition in the prison mailing system on September 9, 2016, however it was not received by the clerk of court for filing until September 29, 2016. Due to the unexplained delay, petitioner is not given the benefit of the mailbox rule as to his federal petition.

record shows that the petitioner's mental illness actions demonstrated symptoms of poor judgment"; and

(2) "Trial court caused ineffictive [sic] of assistance of counsel."

(Pet., Insert.)

Respondent contends the petition is untimely under the federal statute of limitations. (Resp't's Answer at 4-8.)

## II. Statute of Limitations

Title 28 U.S.C., § 2244(d) imposes a one-year statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. Section 2244(d) provides:

> (1) A 1-year period of limitations shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitations period shall run from the latest of-
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

3

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

In an effort to trigger subsection (D), petitioner asserts that the factual predicate of his current grounds was not known until counsel's affidavit was submitted in the first state habeas proceeding. (Pet'r's Objection at 2-3.) In his first state application, petitioner complained of ineffective assistance of his trial counsel. Specifically, he claimed counsel was ineffective by failing to acquire and investigate his mental health records in support of a claim that he was mentally incompetent to stand trial and/or so as to "associate it with the facts of his case." (SHR02 at 7.) Counsel responded to the allegations in an affidavit, stating (all grammatical errors are in the original):

> This case was disposed of by a guilty plea to the Court for the offense of Aggravated Assault with a Deadly Weapon. Because of Huckaby's prior criminal record he was a habitual violator and was subjected to a sentence of 25 to 99 years or life in prison. The plea bargain he accepted was for 27 years in prison.
>
> The facts of this case are not in dispute. Huckaby arrived at the home of the victim (and he alleged as his home) and kicked in the door. He found his wife (Kimberly Little) along with another man located at the residence. Huckaby proceeded to get a knife and stab Little several times. When the police arrived at the location Huckaby was present and according to the police report stated "That's what happens when you bring another male in my mother fuckin' house." It is

4

clear from this statement he was aware of what was going on at the time of the offense and his reason for committing the offense. Actions and a statement which does not demonstrate a lack of mental capacity caused by mental deficiency or mental illness.

The records provided to me by Huckaby's family did not provide a defense to the charge and being diagnosed with Antisocial Personality Disorder, Mood Disorder poor insight or poor judgment is not a legal defense. If it was almost all criminal cases would be excused. The original offer on this case was 35 years in prison. After discussing his mental issues with the prosecutor Huckaby's offer was lowered to 27 years, two years above the minimum possible sentence. We were set for trial and Huckaby was free to continue to trial and have a jury determine his punishment. He knowingly, freely and voluntarily accepted the plea bargain for 27 years in prison.

His mental health records would not have been admissible at the guilty/not guilty portion of the trial because they were not relevant to his actions nor a defense. The records would have only been used as mitigating evidence and at best could have resulted in a minimum sentence of 25 years in prison. Since he never went to trial mitigation evidence was never an issue. It is evident from the letters written to me by Huckaby and his testimony before the Court that Huckaby was competent and possessed the ability to consult with me with a reasonable degree of rational understanding and possessed a factual understanding of the proceedings against him. I have enclosed two letters written to me by Huckaby which demonstrates his ability to understand the nature of the charges against him and his knowledge of the charges against him.

August 27, 2011:
He wants me to challenge the portion of the indictment for Burglary of a Habitation claiming he cannot burglarize his own residency. He even states portions of the law that he wants me to challenge. He also recognizes the need for the State of Texas to allege a culpable mental state. He wrongly claims that the State made no such claim but what it once again shows is that he does in fact understand the nature of the charges against him. Third, he discusses "sudden passion" as a defense, which it is not, it only applies

to a Murder charge but he certainly is trying to find a
defense to his actions. Fourth, he asks me to look at
the paperwork his family provided and present it to the
State, which I did, however, it would not be a defense
to the charge.

December 8, 2011:
   In this letter he discusses the conversation we
had in front of the Court concerning his competency.
The Court questioned him about if he understood the
nature of his charges and if he could understand and
consult with me. The Court was satisfied that Huckaby
was competent and Huckaby referred to this in the first
paragraph of his letter dated on December 8, 2011.
Nothing in the police report, his letters or
conversations we had privately or in front of the Court
indicated to me or the Court that Huckaby was not
competent to stand trial. His mental history would not
be a defense to the charge and these records were
presented to the prosecutor which resulted in a drop of
eight years on the plea bargain and a sentence that was
only two years above his minimum punishment
possibility. He knowingly, freely and intelligently
chose to plead his case and avoid the possibility of a
life sentence.

(SHR02 at 213-14.)

Petitioner contends that upon discovering that counsel had, in fact, acquired his mental health records from his family and informed and discussed his mental health issues with the prosecution, the trial court should have obtained an expert witness's opinion to determine his competency to stand trial and whether his mental health issues may have effected his actions "on the date and time of his charge," thereby "diminishing the capacity of his responsibility." (Pet., Attach.) According to petitioner, the trial court's failure to pursue his "mental health defense . . . caused a conflict of interest between the

6

counsel and petitioner resulting in the petitioner filing a prose [sic] motion to reappoint counsel, but the trial court never inquired nor had any hearing to find out the reasons why the petitioner requested substitute counsel." (*Id.*) He claims that only after discovering this so-called "newly-discovered" evidence that he "filed an additional claim and renewed his original involuntary plea" claim in his second state habeas application and then in this federal petition. (*Id.*)

However, the fact that counsel obtained petitioner's medical records and discussed his mental health issues with the prosecution could have been discovered with reasonable diligence before his conviction became final. Clearly, petitioner was well aware of his mental health issues, as was his trial counsel, prior to his trial, yet petitioner took no action whatsoever to challenge his conviction for more than three years, and he offers no reason for his delay. Furthermore, counsel's affidavit amounts only to more specifics in support of petitioner's ineffective-assistance allegations. Counsel's affidavit does not change the nature of his underlying grounds for relief. Petitioner's claim that he could not have discovered that counsel had acquired and investigated his mental health records and discussed his mental health issues with the prosecution until counsel executed the affidavit is not supported by the record. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998). In short,

7

petitioner's inaction is incompatible with a finding of due diligence. Thus, petitioner cannot avail himself of the exception in section 2244(d)(1)(D).

Instead, because petitioner's claims involve matters related to his 2012 plea proceedings and conviction, subsection (A) applies to his case. Under subsection (A), the limitations period began to run on the date on which the judgment of conviction became final by the expiration of the time for seeking direct review. For purposes of this provision, petitioner's judgment of conviction became final upon expiration of the time he had for filing a timely notice of appeal on April 26, 2012. Thus, the limitations period commenced on April 27, 2012, and expired one year later on April 26, 2013, absent any tolling. *See* TEX. R. APP. P. 26.2; *Flanagan v. Johnson*, 154 F.3d 196, 200-02 (5th Cir. 1998).

Tolling of the limitations period may be appropriate under the statutory tolling provision in § 2244(d)(2) and/or as a matter of equity. Under the statute, petitioner's state habeas applications filed after limitations had already expired did not operate to toll the limitations period. *Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002); *Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000). Thus, the petition is untimely unless petitioner is entitled to equitable tolling.

Equitable tolling of the statute of limitations is permitted

only in rare and exceptional circumstances when an extraordinary factor beyond a petitioner's control prevents him from filing in a timely manner or he can make a convincing showing that he is actually innocent of the crime for which he was convicted. *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *Holland v. Florida*, 560 U.S. 631 , 649 (2010). Petitioner does not explain his delay in his pleadings, and there is no evidence in the record that he was prevented in some extraordinary way from asserting his rights in state or federal court. Allegations of mental incompetency or mental illness will not support equitable tolling in the absence of evidence demonstrating that such condition, incompetency or illness rendered the petitioner unable to pursue his legal rights in a timely manner. *See Fisher,* 174 F.3d at 715-16. Petitioner provides no basis for this court to conclude that his mental state was so impaired during the relevant time period that he could not pursue his legal remedies in state and federal court.

Nor can petitioner rely on *Trevino v. Thaler* to excuse his untimeliness. (Pet'r's Objection at 3.) In *Trevino*, the Supreme Court held that the Texas bar on successive or subsequent state habeas applications "will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 569 U.S.

9

413, 429 (2013) (quoting *Martinez v. Ryan*, 566 U.S. 1, 18 (2012)). This line of cases address exceptions to a state-imposed procedural default. The bar to review at issue in this case arises from petitioner's failure to meet the <u>federal</u> limitations deadline under the AEDPA. The cases do not address or provide an excuse for the untimely filing of a federal habeas petition. *See Adams v. Stephens*, No. 4:14-CV-395-O, 2015 WL 5459646 at *4 (N.D. Tex. Sept. 17, 2015); *Reynolds v. Stephens*, No. 3:13-CV-2728-P, 2014 WL 2575752 at *3 (N.D. Tex. June 9, 2014).

Therefore, petitioner's federal petition was due on or April 26, 2013. His petition, filed on September 29, 2016, is untimely.

For the reasons discussed herein,

It is ORDERED that petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, dismissed as time-barred. It is further ORDERED that a certificate of appealability be, and is hereby, denied as petitioner has not made a showing that reasonable jurists would question this Court's procedural ruling.

SIGNED December  27 , 2017.

_____
JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE

10